Case No. 24-1656

## UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

LINDA CRAWFORD,

Plaintiff – Appellant,

v.

SALVE REGINA UNIVERSITY; SALVE REGINA UNIVERSITY BOARD OF TRUSTEES through its President, Dr. Kellie J. Armstrong; JAMES G. MITCHELL, Chair SRU Department of Modern Languages and President, Salve Regina AAUP Chp; ESTHER ALARCON-ARANA, Faculty, SRU Dept. of Modern Languages; and EMILY COLBERT-CAIRNS, Faculty, SRU Dept. of Modern Languages,

Defendants – Appellees.

Appeal from District Court for Rhode Island, No. 1:23-cv-00380-MSM-PAS

## APPELLEES' BRIEF

Joseph D. Whelan (#5694)
Sara A. Rapport (#6184)
WHELAN CORRENTE &
FLANDERS LLP
100 Westminster Street, Suite 710
Providence, RI  02903
Tel. 401-270-4500
jwhelan@whelancorrente.com
srapport@whelancorrente.com

*Counsel for Appellees*

## RULE 26.1(a) DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, Salve Regina University hereby gives notice that it does not have any parent corporation and that no publicly-held corporation owns 10% or more of its stock.

# TABLE OF CONTENTS

TABLE OF CONTENTS ………………………………………………………… ii

TABLE OF AUTHORITIES ................................................................................... iii

I.    INTRODUCTION ....................................................................................1

II.   STATEMENT OF THE ISSUE .................................................................2

III.  STATEMENT OF THE CASE .................................................................3

   A. Procedural Background ........................................................................3
   B. Factual Background .............................................................................4

IV.   SUMMARY OF THE ARGUMENT...........................................................12

V.    STANDARD OF REVIEW.......................................................................13

VI.   ARGUMENT............................................................................................14

   A. The Court Properly Reviewed The Faculty Manual Excerpts And Hearing Board Report Without Converting Defendants' 12(b)(6) Dismissal Motion To One For Summary Judgment. ...............................................................14

   B. Plaintiff Fails To Set Forth Facts Sufficient To Establish A Prima Facie Case of Discrimination Based On Her Gender, Race, Sexual Orientation, Age, And Religion Under RICRA, FEPA, Title VII, Title IX, And The ADEA. 16

   C. Plaintiff Fails To Set Forth Facts Sufficient To Establish A Prima Facie Case Of Hostile Work Environment Under RICRA, FEPA, Title VII, and the ADEA. ......................................................................................................23

   D. Plaintiff Fails To Set Forth Facts Sufficient To Establish A Prima Facie Case Of Retaliation Under Title VII And Title IX................................................28

VII.  CONCLUSION........................................................................................32

CERTIFICATION OF COMPLIANCE ................................................................33

CERTIFICATE OF SERVICE .......................................................................33

# TABLE OF AUTHORITIES

**Cases**

*Alvarado v. Donahoe*, 687 F.3d 453 (1st Cir. 2012) …………………………… 28

*Ayala-Gerena v. Bristol Myers-Squibb Co.,* 95 F.3d 86 (1st Cir. 1996) ……….. 20

*Ayala-Sepulveda v. Municipality of San German*, 671 F.3d 24 (1st Cir. 2012) … 25

*Bartlett v. Am. Power Conversion Corp.*, No. CA 05-084 ML, 2006 U.S. Dist. LEXIS 72294 (D.R.I. Sep. 20, 2006) ……………………………………………… 26

*Bentley v. AutoZoners, LLC*, 935 F.3d 76 (2d Cir. 2019) …………………......... 17

*Burns v. Johnson*, 18 F. Supp. 3d 67 (D. Mass. 2014) …………………………….. 31

*Calvi v. Knox Cty.*, 470 F.3d 422 (1st Cir. 2006) ………………………………….. 17

*Campbell v. Garland*, No. 22-11067, 2023 U.S. App. LEXIS 29160 (5th Cir. Nov. 2, 2023) …………………………………………………………………………. 26

*Cherkaoui v. City of Quincy*, 877 F.3d 14 (1st Cir. 2017) ……………………… 28

*Coleman v. Md. Court of Appeals*, 626 F.3d 187 (4th Cir. 2010) ………………. 22

*Day v. City of Providence*, 338 F. Supp. 2d 310 (D.R.I. 2004) …………………. 21

*Dicroce v. McNeil Nutritionals, LLC*, 82 F.4th 35 (1st Cir. 2023) ……………… 13

*DiOrio v. Nat'l Educ. Ass'n*, No. 23-246 WES, 2023 U.S. Dist. LEXIS 198656 (D.R.I. Nov. 6, 2023) ……………………………………………………………. 16

*Dressler v. Daniel*, 315 F.3d 75 (1st Cir. 2003) ………………………………... 31

*Espinal v. Nat'l Grid NE Holdings 2, LLC*, 693 F.3d 31 (1st Cir. 2012) ……….. 17

*Felix v. Town of Kingston*, No. 19-1774, 2021 U.S. App. LEXIS 38057 (1st Cir. 2021) ……………………………………………………………... 13, 25, 29, 30

*Flood v. Bank of Am. Corp.,* 780 F.3d 1 (1st Cir. 2015) ………………………... 28

*Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63 (1st Cir. 2014) …………………. 14

*Frappier v. Countrywide Home Loans*, 750 F.3d 91 (1st Cir. 2014) …………… 13

iii

*Garita Hotel Ltd. Pshp. v. Ponce Fed. Bank, F.S.B.*, 958 F.2d 15 (1st Cir. 1992). 14

*Garmon v. AMTRAK*, 844 F.3d 307 (1st Cir. 2016) …………………………….. 24

*Gonzalez v. El Dia, Inc.,* 304 F.3d 63 (1st Cir. 2002) …………………………... 18

*Goodwin v. UTGR, Inc.*, 2024 U.S. Dist. LEXIS 179864 (D.R.I. Sep. 30, 2024).  24

*Gumm v. Ak Steel Corp.*, No. 24-1767, 2025 U.S. App. LEXIS 6468 (6th Cir. Mar. 18, 2025) ……………………………………………………………………… 26

*Harris v. La. through the La. Dep't of Pub. Safety*, No. 22-897-SDD-RLB, 2023 U.S. Dist. LEXIS 173896 (M.D. La. Sep. 28, 2023) ………………………………. 22

*Ironshore Specialty Ins. Co. v. United States*, 871 F.3d 131 (1st Cir. 2017) …… 14

*Merrick v. Franey Med. Lab, Inc.*, No. 19-cv-11002-LTS, 2019 U.S. Dist. LEXIS 159454 (D. Mass. Sep. 19, 2019) ……………………………………………….. 19

*Miceli v. JetBlue Airways Corp.*, 914 F.3d 73 (1st Cir. 2019) ………………….. 30

*Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220 (1st Cir. 2012) …………………… 17

*Negron v. Scotiabank De P.R.*, 260 F. Supp. 2d 403 (D.P.R. 2003) ……………. 20

*Ngomba v. Olee*, No. 18-11352-MPK, 2019 U.S. Dist. LEXIS 38182 (D. Mass. Mar. 11, 2019) ………………………………………………………………... 17

*Pearson v. Mass. Bay Transp. Auth.*, 723 F.3d 36 (1st Cir. 2013) ……………… 30

*Ponte v. Steelcase Inc.,* 741 F.3d 310 (1st Cir. 2014) …………………………... 30

*Rae v. Woburn Pub. Sch.*, 113 F.4th 86 (1st Cir. 2024) ………………………… 31

*Reilly v. Cox Enterprises,* No. 13-785S, 2014 U.S. Dist. LEXIS 128452 (D.R.I. Apr. 16, 2014) ………………………………………………………………… 19

*Ross v. Hasbro*, Inc., No. 19-424-JJM-PAS, 2019 U.S. Dist. LEXIS 186935 (D.R.I. Oct. 29, 2019) ………………………………………………………………… 16

*Scalone-Finton v. Falmouth Pub. Sch.*, No. 1:21-cv-11792-JEK, 2024 U.S. Dist. LEXIS 175553 (D. Mass. Sep. 27, 2024) …………………………………… 28

*Sepulveda-Vargas v. Caribbean Rests., LLC*, 888 F.3d 549 (1st Cir. 2018) …… 27

iv

*Solola v. Prospect CharterCare, LLC*, No. 16-35 S, 2016 U.S. Dist. LEXIS 110030 (D.R.I. Aug. 17, 2016) …………………………………………………... 16, 19, 23

*Torrech-Hernandez v. Gen. Elec. Co.*, 519 F.3d 41 (1st Cir. 2008) …………….. 21

*Trans-Spec Truck Serv. v. Caterpillar Inc.*, 524 F.3d 315 (1st Cir. 2008) …… 4, 15

*Vargas v. Santander Fin. Servs.*, No. 15-1521, 2018 U.S. Dist. LEXIS 230000 (D.P.R. Sept. 4, 2018), *aff'd*, *Santana-Vargas v. Banco Santander P.R.*, 948 F.3d 57 (1st Cir. 2020) …………………………………………………………... 27

*Warren v. Kemp*, 79 F.4th 967 (8th Cir. 2023) …………………………….. 29

*Wright v. CompUSA, Inc.*, 352 F.3d 472 (1st Cir. 2003) …………………….... 31

*Zell v. Ricci*, 321 F. Supp. 3d 285 (D.R.I. 2018) …………………………….... 32

**Statutes**

28 U.S.C. § 1331……………………………………………………………. 3

28 U.S.C. §1441…………………………………………………………….. 3

28 U.S.C. § 1446……………………………………………………………. 3

Rhode Island Civil Rights Act of 1990 (R.I. Gen. Laws § 42-112-12) ………. 3, 16

Rhode Island Fair Employment Practices Act (R.I. Gen. Laws § 28-5-1) …… 3, 16

Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000 et seq.) ………… 3, 16

Title IX of the Education Amendments of 1972 (20 U.S.C. § 1681 et seq.) …. 3, 16

Age Discrimination in Employment Act (29 U.S.C. § 621 et seq.) ………….. 3, 16

v

## I.    INTRODUCTION

This case is about a tenured professor, Linda Crawford ("Plaintiff"), who was terminated for cause on January 3, 2022. Defendant Salve, through its President Dr. Kelli J. Armstrong, cited as the basis for cause, Plaintiff's "continued misconduct," "failure to communicate," and "failure to comply with the requirements of a faculty member in accordance with the Faculty Manual."[1] (Compl. ¶ 17).

Plaintiff unsuccessfully appealed her termination at Salve twice – once to Defendant Salve's Faculty Hearing Board made up of her peers and once to Defendant Salve's Board of Trustees. Both the Faculty Hearing Board and Board of Trustees affirmed Plaintiff's termination.

Unhappy with these results, Plaintiff filed the underlying Complaint alleging that (1) her termination resulted from some unspecified, undocumented, and unexplained discriminatory animus by Defendants based on her gender (female), race (Caucasian), sexual orientation/identification (heterosexual and presumably cisgender), age (over 40), and religion (Christian); (2) Defendants created a hostile work environment; and (3) Defendants retaliated against her for engaging in some

---

[1] The terms in quotations are taken from the allegations in the Complaint itself, which is attached to the Appellant's Appendix at pp. 008-048, and is hereafter cited as "Compl.".

unspecified, undocumented, and unexplained protected activity. The District Court dismissed all three claims, finding that Plaintiff failed to establish a *prima facie* case of discrimination, hostile work environment, and retaliation because she failed to establish (1) a connection between her membership in any protected class and termination, (2) that she experienced either severe or pervasive harassment based on her membership in a protected class, and (3) that she engaged in protected activity. (Memorandum and Order 178-179, 181)[2].

Plaintiff is once again unhappy with the results and is now appealing the District Court's decision to grant Defendants' Motion to Dismiss her state and federal anti-discrimination claims (Counts V-IX). As explained below, Defendants respectfully request that this Court affirm the lower court's ruling in its entirety because Plaintiff has failed to set forth a factual predicate sufficient to state a plausible claim on a single count.

## II.    STATEMENT OF THE ISSUE

Whether the District Court erred in granting, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants' Motion to Dismiss Plaintiff's Complaint as to Plaintiff's state and federal anti-discrimination claims (Counts V-IX).

---

[2] The Memorandum and Order is attached to the Appellant's Appendix (158-183) and is hereafter cited as "Mem. & Order".

2

### III.    STATEMENT OF THE CASE

**A. Procedural Background.**

Plaintiff filed her Complaint in Rhode Island Superior Court. Defendants removed the Complaint to the United States District Court for the District of Rhode Island (the "District Court") based on federal question jurisdiction pursuant to 28 U.S.C. §§ 1331, 1441, and 1446, and subsequently filed a Motion to Dismiss the Complaint for failure to state a claim pursuant to Rule 12(b)(6) (the "Motion"). The District Court granted Defendants' Motion as to all Plaintiff's federal and state anti-discrimination claims (Counts V-IX) and remanded the remaining state-law contract and tort claims (Counts I-IV) to the Superior Court for further review. Plaintiff is now appealing the District Court's decision to dismiss her federal and state anti-discrimination claims. Thus, the within appeal is focused solely on Plaintiff's claims that Defendants subjected her to discrimination, harassment, and retaliation based on her gender, age, race, color, religion, and sexual orientation in violation of state and federal law. *See* R.I. Gen. Laws § 42-112-12 (RICRA), R.I. Gen. Laws § 28-5-1 (RI FEPA), 42 U.S.C. § 2000 et seq. (Title VII), 20 U.S.C. § 1681 et seq. (Title IX), and 29 U.S.C. § 621 et seq. (ADEA).

## B. Factual Background.

An overview of the allegations follows, with reference to the Complaint and as applicable, the documents upon which the Complaint relies.[3]

Plaintiff was a tenured member of the Modern Languages Department, whose Chair was Dr. James G. Mitchell. For years, Plaintiff had shown "regular patterns of abandonment in her teaching or interaction with students, the amount of time spent on instruction versus time talking about other (often personal) matters." (Board Report 038). In essence, Plaintiff's teaching was subpar, and Salve had tried without success to remediate the problems. The Decision by the Faculty Hearing Board (the "Hearing Board") summarized examples of the longstanding challenges:

> [W]e are concerned that there continues to be issues about student participation grades after numerous complaints over a number of years, and in each of the last 5 years of student evaluations that we reviewed. The chair brought this to her attention and her colleagues offered more transparent models for grading participation. Despite this, Dr. Crawford did not change her grading process. . . . [W]e are not clear why this issue has not been corrected and continues to be a regular complaint.
>
> It is concerning that Dr. Crawford spends a lot of time apparently discussing her personal life during class times. The issue was raised in a discussion with the chair at the time and there seemed to be an agreement that there

---

[3] This Court may consider the same two documents reviewed by the District Court (*i.e.*, the faculty manual excerpts (*Exhibit 1*) and the faculty committee hearing board report, including the majority and minority opinions (*Exhibit 8*)), which are attached to Appellees' Appendix (001-046) and hereafter referred to as "Faculty Manual" and "Board Report". *See Trans-Spec Truck Serv. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008). *See infra* at 14-15.

> would be less of this. The issues continued to be present in the evaluations . . . If there was a pedagogical reason it is not clearly articulated to students, especially given that it seems to be a regular occurrence.

(*Id.* at 4-5).

The catalyst for the hearing before the Hearing Board and the decision that resulted was Plaintiff's conduct in a class on November 15, 2021, which she taught on Spanish American Culture and Civilization. (Compl. ¶¶ 23-24). Plaintiff had assigned a reading on the link between gender, sexuality and power in Latin America that used the word "transvestites."[4] When the class convened to discuss, Student D objected to the selection of a 2003 text using that word, and allegedly had an "outburst in class." (*Id.* ¶ 27).

After class, Dr. Mitchell – the department chair – met with and "appropriately offered immediate support to the offended and emotionally distraught students." (*Id.* ¶ 37; Board Report 043). During this meeting, Dr. Mitchell informed students that they could submit formal complaints to University Provost and Vice-President of Academic Affairs, Nancy G. Schreiber regarding

---

[4] In paragraph 24, Plaintiff alleges that the reading to which the students objected used the word "transvestites" but in paragraph 27, she alleges that the reading used the word "transgender," and that Student D objected to the term "transgender" and had an outburst in class. Defendants assume that Plaintiff meant to say that the reading used the term "transvestites." Student D would not have had an outburst over used of the term "transgender," since as Plaintiff alleges in paragraph 31, Student D described himself as a "transgender gay man." The District Court made this same finding. (Mem. & Order 161, n.1).

Plaintiff's conduct. (*Id.* ¶ 40). On November 15-16, 2021, a number of students submitted written complaints to Dr. Schreiber. (Compl. ¶¶ 29-34, 40-42).

One student's complaint denounced Plaintiff as "ignorant." (Compl. ¶ 33).[5] Another alleged that Plaintiff "used derogatory language regarding transgender people during our sexuality and diversity lesson." (*Id.* ¶¶ 34-35).

Shortly after receipt of the written complaints, Salve leadership convened with Plaintiff's students via zoom to afford them an opportunity to "share what occurred in classes" with Plaintiff over the semester. (*Id.* ¶ 43). Salve reported that students in the zoom meeting described Plaintiff as using "offensive language and hateful rhetoric" towards the LBGTQ+ community and people of color. (*Id.* ¶ 44).

On or about November 22, 2021, Timothy J. Dunn, the Interim Assistant Dean of Students and Title IX Coordinator, sent Plaintiff a letter via electronic mail, advising her that he had received information that she had engaged in behavior that "may violate" the Salve Sexual Harassment and Anti-Discrimination Policy and Grievance Procedures. (*Id.* ¶¶ 46-49).[6] Notably, Plaintiff was the Title

---

[5] As Plaintiff alleges, that student wrote: "It would be better if we read one directly from a Latinx author instead of an Englishmen [sic] describing what happens in Latin America." (Compl. ¶ 30).

[6] Plaintiff alleges that she "was informed by the President" of the November 22 email but that she "has no recollection of ever receiving such an email." (Compl. ¶ 47).

IX respondent. There is no allegation in the Complaint that Plaintiff herself initiated Title IX proceedings against any student or faculty member.

On or about January 3, 2022, Salve, through President Armstrong, notified Plaintiff via letter that she was terminated "for cause" and provided the bases for that cause. (Compl. ¶¶ 17 & 20). On January 25, 2022, Plaintiff had a conference with President Armstrong. (*Id.* ¶ 20). Unsatisfied with the results of that conference, Plaintiff appealed her termination "pursuant to the requirements" of the "Faculty Manual" (*Id.* ¶ 54).[7]

The Hearing Board proceeding took place in May 2022, with full participation from Plaintiff. (Compl. ¶ 56).

The Hearing Board issued its decision on June 7, 2022, with three members voting to affirm the President's decision, and two dissenting. (Board Report 035-046). The task for the Hearing Board was to determine the "good faith basis" for the President's decision to terminate (Board Report 035; Faculty Manual 031), by

---

[7] *Exhibit 1* (Faculty Manual, Appellees' Appendix 001-033) is comprised of the excerpts from the Faculty Manual for Salve (rev'd 11-19-2019) relevant to the issues presented here. These are: Chapter I (Faculty Status and Categories of the Faculty); Chapter II (Responsibilities and Rights of the Teaching Faculty); Chapter IV (Appointment, Reappointment, and Issuance of Contracts to the Teaching Faculty); and Chapter VIII (Termination of Contract). For ease of reference, Defendants have not renumbered the pages but have retained the original numbering from the Faculty Manual.

7

assessing whether Plaintiff had shown that the "serious reason" or the "grounds upon which this termination (dismissal for cause) are based," as

> submitted by the President (or a representative) is irreparably and negatively affected by prejudicial substantial errors and as set forth in the Answer submitted to the Faculty Hearing Board, and the Board in such event, must further determine that the termination could not be otherwise sustained.

(Faculty Manual 027, 030).

A "serious reason" under the Faculty Manual includes but is not limited to (1) "Failure to meet responsibilities set forth in Chapter II of these "Statutes" (Responsibilities and Rights of the Teaching Faculty)"; (2) "Misconduct (including sexual harassment) which clearly demonstrates a violation of the standards of behavior generally accepted in the Salve Regina University or a violation of the professional trust or conduct expected among the University's academic professionals"; and (3) "[a]bandonment or serious neglect of the duties of the academic profession, including the duty to maintain levels of skill and information and to provide courses of instruction which meet the academic standards of the individual's discipline." (*Id.*).

These three above-referenced examples of "cause" were the grounds upon which the majority decision rested, although the evidence of abandonment also constituted evidence of failure to adhere to teaching standards as set forth in Faculty Manual "Statutes." Specifically, the Hearing Board found that the evidence presented "cause" for dismissal for the following "serious reasons."

8

*Derogatory Language*: Plaintiff "regularly and routinely uses derogatory language that minimizes others and promotes hurtful stereotypes" (Board Report 038); lacked the "training to teach . . . controversial topics in a way that leads to transformative interactions with students" (*id.*); and did not teach these "sensitive issues related to gender, ethnicity, etc." in a "culturally responsive [sic] manner." (*Id.*).[8] Although this finding describes "misconduct," and a "violation of professional trust" (specifically toward students), the Hearing Board did not label it as such and rejected the President's claim that Plaintiff had engaged in "sexual harassment," deeming it to be "unclear" if a "proper title IX investigation was even conducted." (Board Report 039).

*Abandonment/Teaching Standards*: Plaintiff showed "regular patterns of abandonment in her teaching or interaction with students, the amount of time spent on instruction versus time talking about other (often personal) matters, and especially in regard to student participation grades." (*Id.*). The Hearing Board concluded that "these issues" reflect a failure "to meet responsibilities set forth in Chapter II of these "Statutes" (Responsibilities and Rights of the Teaching Faculty)" because they reflected Plaintiff's failure to carry out the teaching

---

[8] The Hearing Board wrote that in addition to evidence from colleagues, students, and course evaluations, even Plaintiff herself, in her response to the President's "cause for dismissal" provided support for the Hearing Board's conclusion that "sensitive issues related to gender, ethnicity, etc.," were not "taught in a culturally responsive manner." (*Id.* at 4).

responsibility of "[r]egular availability and prompt communication with one's students, using whatever means are appropriate." (Board Report 038).[9]

The Hearing Board found that both Plaintiff's failure to communicate with students regarding their participation grades and her digression into discussion of personal matters implicated two other teaching standards that provided additional support for the conclusion of abandonment of duty to teach. Regarding the first concern: "There were "numerous complaints over a number of years, and in each of the last 5 years of student evaluations" that the Hearing Board reviewed. (*Id.*). The Chair had brought the matter to her attention and colleagues had provided models to assist Plaintiff in correcting the problem. Plaintiff admitted at the hearing that she kept the data regularly; thus, the Hearing Board concluded "we are not clear why this issue has not been corrected and continues to be a regular complaint." It wrote: "Students have a right to know where they stand in this category, and every other major grading element." This data, the Hearing Board concluded, "supports abandonment of duties as a valid dismissal reason" based on Plaintiff's failure "to meet responsibilities set forth in Chapter II of these "Statutes" (Responsibilities and Rights of the Teaching Faculty)" and specifically

---

[9] This teaching standard appears under Chapter II(A)(1)(g), under Part I – entitled "Statutes of the Faculty." (Faculty Manual 009). Although the Hearing Board references page 11 of the Faculty Manual, the language appears at page 14.

under the teaching standard to provide "clear direction" to students and a "fair evaluation of their work in examinations. (*Id.* at 5).[10]

Regarding the second concern, that Plaintiff discussed "her personal life during class times," the Hearing Board again observed that Plaintiff had been counseled, and yet the problem continued to be evident in student evaluations. Even if she had a pedagogical purpose for such personal digressions, that purpose was "not clearly articulated to students," and hence the Hearing Board deemed this to be additional evidence of abandonment of duty.[11] This meant that the evidence again reflected her failure to meet responsibilities set forth in Chapter II of these "Statutes" (Responsibilities and Rights of the Teaching Faculty), in this instance by failing to demonstrate "[e]ffectiveness in communicating the content of the discipline and in stimulating attitudes of intellectual curiosity and disciplined inquiry." (*Id.*).[12]

The Hearing Board rejected the allegation that Plaintiff had "operated to undermine her colleague's credentials" and engaged with students "about the ethnicity or religious beliefs of her colleagues." (*Id.* at 4). It found that the

---

[10] This teaching standard appears in the Faculty Manual under Chapter II(A)(1)(d), at page 13 (and not page 11 as indicated by the Hearing Board).

[11] The Hearing Board rejected the characterization of this deficit as "incompetence." (*Id.*).

[12] This teaching standard appears in the Faculty Manual under Chapter II(A)(1)(a), at page 13 (and not page 11 as indicated by the Hearing Board).

evidence was either "biased and undocumented" or appeared to be based on "hearsay," and concluded that it should not "be considered as evidence of misconduct." (*Id.*).

Plaintiff appealed the Hearing Board affirmance of President Armstrong's decision to terminate Plaintiff's employment. (Compl. ¶ 82). By letter dated July 26, 2022, the Salve Board of Trustees informed Plaintiff that it had voted unanimously to affirm the President's dismissal decision. (Compl. ¶ 83).

## IV.    SUMMARY OF THE ARGUMENT

The District Court properly dismissed Plaintiff's state and federal anti-discrimination claims at the 12(b)(6) stage of the proceeding. As an initial matter, the District Court appropriately considered the faculty manual excerpts and the faculty committee hearing board report without converting Defendants' 12(b)(6) dismissal motion to one for summary judgment. Further, Plaintiff fails to establish a *prima facie* case of:

- discrimination under RICRA, FEPA, TITLE VII, TITLE IX, and the ADEA because she fails to connect any adverse employment action to her gender, race, sexual orientation, age, and/or religion;

- hostile work environment under RICRA, FEPA, Title VII, and the ADEA because the totality of alleged incidents does not plausibly

12

show that Plaintiff was subjected to severe or pervasive harassment based on her gender, race, sexual orientation, age, and/or religion; and

- retaliation under Title VII and Title IX because Plaintiff did not engage in any protected activity.

## V.     STANDARD OF REVIEW

This Court "review[s] de novo the district court's order granting a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)," thus asking "whether the well-pleaded factual allegations, viewed in the light most favorable to the plaintiff plausibly narrate a claim for relief." *Dicroce v. McNeil Nutritionals, LLC*, 82 F.4th 35, 39-40 (1st Cir. 2023) (cleaned up); *see also Frappier v. Countrywide Home Loans*, 750 F.3d 91, 96 (1st Cir. 2014) (noting "[w]e review de novo a district court's decision to allow a motion to dismiss, taking as true the well-pleaded facts in the complaint and drawing all reasonable inferences in favor of the plaintiff."). While this Court may "resolve all reasonable inferences in favor of the nonmoving party," it "must ignore conclusory allegations, improbable inferences, and unsupported speculation." *Felix v. Town of Kingston*, No. 19-1774, 2021 U.S. App. LEXIS 38057, at *3 (1st Cir. 2021).

Notwithstanding its de novo review, this Court may "affirm the order of dismissal on any ground made manifest by the record." *Dicroce,* 82 F.4th at 39-40.

13

## VI.   ARGUMENT

**A. The Court Properly Reviewed The Faculty Manual Excerpts And Hearing Board Report Without Converting Defendants' 12(b)(6) Dismissal Motion To One For Summary Judgment.**

It is well established that a "motion to dismiss is not automatically transformed into a motion for summary judgment simply because matters outside the pleadings are filed with, and not expressly rejected by, the district court." *Garita Hotel Ltd. Pshp. v. Ponce Fed. Bank*, *F.S.B.*, 958 F.2d 15, 18 (1st Cir. 1992). "[W]hen a complaint's factual allegations are expressly linked to and admittedly dependent upon a document (the authenticity of which is not challenged), then the court can review it upon a motion to dismiss." *Ironshore Specialty Ins. Co. v. United States*, 871 F.3d 131, 135 (1st Cir. 2017) (internal quotation marks omitted); *see also Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 74 (1st Cir. 2014).

Here, the District Court limited "its consideration of the Motion to Dismiss exhibits to the faculty manual excerpts and the faculty committee hearing board report, including the majority and minority opinions" because "plaintiff does not dispute the authenticity of these two documents; indeed, she conceded that they are 'arguably incorporated into the Complaint.'" (Mem. & Order 169). Thus, the District Court did not commit reversible error when it chose to consider the faculty manual excerpts and the faculty committee hearing board report without

14

converting Defendants' dismissal motion under 12(b)(6) to one for summary judgment under Rule 56. *See supra*.

Similarly, this Court may review the faculty manual excerpts and faculty committee hearing board report because this Court reviews the documents "actually considered by the district court in its Rule 12(b)(6) analysis," *Trans-Spec Truck Serv. v. Caterpillar Inc.*, 524 F.3d 315, 321 (1st Cir. 2008), and because Plaintiff once again concedes that the faculty manual and faculty committee hearing board report are "arguably incorporated into the Complaint." (Appellant Brief at 39).[13]

Accordingly, the District Court's review of the faculty manual excerpts and the faculty committee hearing board report was proper.

---

[13] Like the Faculty Manual and Board Report, the other exhibits (*i.e.*, allegedly defamatory statements, November 22 letter, the Title IX policy, and letter reflecting Plaintiff's appointment, termination and denial of her appeal from the Hearing Board decision), are incorporated in the Complaint because Plaintiff either references or parrots the contents of each document in the Complaint. *See* Compl. ¶¶ 17, 20, 22, 29-35, 40-42, 46-49, 54-55, 59, 64-67, 71, 75-76, 80-81, 83, 89-96, 98, 107-116, 118-119, 122, & 125. With the exception of the November 22 letter and the Title IX policy, these exhibits relate to the Plaintiff's claims of contract, intentional infliction of emotional distress, defamation/false light/defamation per se, and tortious intentional interference with a contractual relationship. Since the District Court remanded these state claims, Defendants do not challenge its decision not to consider these exhibits. Defendants also do not challenge the District Court's decision not to consider the November 22 letter and the Title IX policy.

**B. Plaintiff Fails To Set Forth Facts Sufficient To Establish A Prima Facie Case of Discrimination Based On Her Gender, Race, Sexual Orientation, Age, And Religion Under RICRA, FEPA, Title VII, Title IX, And The ADEA.**

Counts V (RICRA – R.I. Gen. Laws § 42-112-12), VI (RI FEPA – R.I. Gen. Laws § 28-5-1), VII (Title VII – 42 U.S.C. § 2000 et seq.), VIII (Title IX – 20 U.S.C. § 1681 et seq.), and IX (ADEA – 29 U.S.C. § 621 et seq.) allege violations by the Salve Defendants of federal and state laws proscribing unlawful discrimination on the basis of characteristics protected under those laws: gender, age, race, color, religion, and sexual orientation.

To set forth a viable discrimination claim, Plaintiff must show (1) she is a member of a protected class; (2) she was qualified for the job; (3) the Salve Defendants took an adverse employment action against her; and (4) Plaintiff's position remained open or was filled by a person with similar qualifications. *Solola v. Prospect CharterCare, LLC*, No. 16-35 S, 2016 U.S. Dist. LEXIS 110030, at *3-4 (D.R.I. Aug. 17, 2016). In doing so, Plaintiff must "plead facts that allow the Court to *plausibly infer liability*," and an "alleged violative act to harm" must "go beyond mere *speculation*." *Ross v. Hasbro*, Inc., No. 19-424-JJM-PAS, 2019 U.S. Dist. LEXIS 186935, at *4 (D.R.I. Oct. 29, 2019) (citing *Solola*, 2016 U.S. Dist. LEXIS 110030 at *2; *DiOrio v. Nat'l Educ. Ass'n*, No. 23-246 WES, 2023 U.S. Dist. LEXIS 198656, at *24 (D.R.I. Nov. 6, 2023) (emphases added)).

16

Significantly, conclusory statements "are not entitled the assumption of truth." *Id.* at *4.

Here, the District Court held: "[t]aking all the plaintiff's factual allegations holistically and construing all inferences in her favor does not yield a plausible claim that her membership in any of the submitted protected classes played a role in her termination." (Mem. & Order 178). The District Court was correct.[14]

The allegations set forth in Counts V through IX, in paragraphs 137 through 168, are 100% conclusory. They are comprised of "sheer speculation, unaccompanied by any factual predicate," and are not sufficient to "confer plausibility." *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 225-26 (1st Cir. 2012). *See also supra* at 19; *Ngomba v. Olee*, No. 18-11352-MPK, 2019 U.S. Dist. LEXIS 38182, at *4-5 (D. Mass. Mar. 11, 2019) (explaining that a complaint alleging Title VII violations "must at least set forth minimal facts as to who did what to whom, when, where, and why." (citing *Calvi v. Knox Cty.*, 470 F.3d 422, 430 (1st Cir.

---

[14] *See Espinal v. Nat'l Grid NE Holdings 2, LLC*, 693 F.3d 31, 35 (1st Cir. 2012) (noting the court does "not sit as a super-personnel department that reexamines an entity's business decisions," its task is instead "limited to determining whether the employer believed in the accuracy of the reason given for the adverse employment action." (internal quotations omitted)); *see also Bentley v. AutoZoners, LLC*, 935 F.3d 76, 89 (2d Cir. 2019) ("The court's role is to prevent unlawful [employment] practices, not to act as a superpersonnel department that second guesses employers' business judgments.").

17

2006))). The four paragraphs that are not 100% conclusory are still conclusory – and wholly insufficient to salvage the Complaint.

*Paragraph 71*: Plaintiff alleges that Student D invoked the phrase "cis white woman" during the November 2021 class. Yet this remark, even if made as alleged, came from a student, whom Plaintiff acknowledges was having an "outburst" during the November 15, 2021 class (Compl. ¶ 27), rather than a Salve official or anyone with authority to affect Plaintiff's employment. *See Gonzalez v. El Dia, Inc.,* 304 F.3d 63, 69 (1st Cir. 2002) ("stray workplace remarks, as well as statements made either by non-decisionmakers or by decisionmakers not involved in the decisional process, normally are insufficient, standing alone, to establish either pretext or the requisite discriminatory animus." (internal quotations omitted)). Moreover, as the District Court found: "common sense leads the Court to read Student D's statements describing plaintiff as a straight, white, cisgender woman as part of his explanation, first to the plaintiff and then to the provost, of why he was offended by the plaintiff's use of the term "trans[vestite]" and by her purported attempt to "tell [him] what" he, as a "transgender gay man," should "find offensive."" (Mem. & Order 174). Thus, there is an "obvious alternative explanation" for the comment that undercuts any inference of discriminatory animus. (*Id.*). Finally, the Hearing Board decision itself did not turn on or even reference Student D's remark. (Board Report 035-046).

18

*Paragraph 73*: Plaintiff alleges that Salve replaced Plaintiff with a "male significantly younger than Plaintiff" for "at least part of her teaching schedule." As the District Court concluded, however, "[w]hen considering whether the plaintiff has stated a plausible claim of disparate treatment, [ ], her replacement with a younger male does little to support a reasonable inference that her protected characteristic played a role in her termination." (Mem. & Order 173). In fact, unless Salve replaced Plaintiff with someone who shared with her every single protected characteristic (*i.e.*, a white woman who is over 40 years old, Christian, and heterosexual (Compl. ¶¶ 13 & 14)), the replacement would have to be different from her, as matter of logic. Thus, this allegation is insufficient to establish that Salve intentionally discriminated against her on account of her age and gender. *See Solola*, 2016 U.S. Dist. LEXIS 110030, at *5-8 (dismissing claim under Rule 12(b)(6) by man of Nigerian descent who alleged that he was terminated on account of his race and national origin, who pled that he was the only Black cook during his tenure and was treated "differently than white counterparts"); *Reilly v. Cox Enterprises,* No. 13-785S, 2014 U.S. Dist. LEXIS 128452, at *21-23 (D.R.I. Apr. 16, 2014) (dismissing claim under Rule 12(b)(6) by woman who alleged that she was terminated on account of her age and gender, who pled that she was the only woman in her position and was replaced by a younger man) (citing cases); *Merrick v. Franey Med. Lab, Inc.*, No. 19-cv-11002-LTS, 2019 U.S. Dist. LEXIS

19

159454, at \*5-7 (D. Mass. Sep. 19, 2019) (dismissing ADEA claim where plaintiff alleged that she was replaced by a "younger employee" but failed to state her replacement's age); *Negron v. Scotiabank De P.R.*, 260 F. Supp. 2d 403, 412 (D.P.R. 2003) (holding that plaintiff's "unsupported allegation that he was replaced by a younger individual is not enough to overcome Defendant's [ ] motion for summary judgment.").

*Paragraph 74*: Plaintiff alleges that some unidentified person at some unspecified point in time referred to Plaintiff (and other senior faculty member) as "old school" because she preferred that students use titles instead of first names; that some unidentified person and some unspecified point in time suggested to a student that she might find a "different advisor" (presumably from Plaintiff), who was "capable of "fresh ideas and perspectives""; and that some unidentified person at some unspecified point in time criticized Plaintiff for not using gender neutral endings in Spanish and attributed her style to the fact that she was "older." Plaintiff also alleges that Salve did not assign offices by seniority, implying that she should have had a better office than her younger colleagues. Plaintiff does not, however, identify who made the comments or when and where they did so, and she therefore cannot link these remarks or the office assignments to her dismissal. *See Ayala-Gerena v. Bristol Myers-Squibb Co.,* 95 F.3d 86, 96 (1st Cir. 1996) ("stray remarks" which are not linked to the challenged employment action are insufficient

20

to support an inference of age discrimination); *see also Torrech-Hernandez v. Gen. Elec. Co.*, 519 F.3d 41, 54 (1st Cir. 2008) ("It is well-established that 'energy,' as well as similarly defined terms, does not necessarily connote youth or other age-related characteristics"). As the District Court found: "[t]hese unmoored statements cannot support a reasonable inference between any potential age-based animus and the plaintiff's termination." (Mem. & Order 175).

*Paragraph 78*: Finally, Plaintiff alleges that Salve has treated "other faculty members" with "far greater deference." She alludes to a tenured "male administrator" employed by Salve who had some kind of "legal matter" and who was accommodated with "stepping down," "two sabbaticals," and "course reductions." The first sentence is not only conclusory but does not allege that she was treated with "far less deference" *because of* her gender, age, race, religion, color, or sexual orientation. A generalized allegation of being treated without proper "deference" at work does not describe unlawful discrimination under federal and state antidiscrimination laws. *Cf. Day v. City of Providence*, 338 F. Supp. 2d 310, 315 (D.R.I. 2004) ("Merely juxtaposing a protected characteristic . . . with the fact that plaintiff was treated unfairly is not enough to state a constitutional claim.") (citations omitted). The second sentence is no better. Even if true that some male Salve employee at one time had "a concerning legal matter" and was accommodated with course reductions, sabbaticals, and the opportunity to

21

step down from his position (presumably temporarily), the allegation leaves far too much to speculation to make out a plausible claim that Salve terminated Plaintiff on account of her gender. The District Court found: "[t]he plaintiff's […] allusions are too vague to allow for a reasonable inference that the unnamed faculty member is a similarly situated comparator." (Mem. & Order 172). *See Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190-91 (4th Cir. 2010) (affirming 12(b)(6) dismissal where "the complaint fails to establish a plausible basis for believing [the two comparator] employees were actually similarly situated or that race was the true basis for [plaintiff's] termination."); *Harris v. La. through the La. Dep't of Pub. Safety*, No. 22-897-SDD-RLB, 2023 U.S. Dist. LEXIS 173896, at *12-13 (M.D. La. Sep. 28, 2023) (granting 12(b)(6) dismissal where plaintiff "attempts to identify a white co-worker as a comparator, but he does not allege that their conduct was nearly identical to his own.).

On appeal, Plaintiff reiterates the same sweeping and conclusory allegations that the District Court deemed insufficient in the Complaint itself, as if by repeating these claims in another format will convince the Court that there is something there. For example, Plaintiff writes that the hostility toward her was based on "her gender, age, race, sexual orientation/identification and religion" (Appellant Brief at 11); that "the university did not like her teaching methods and were offended by her personal characteristics" (*id*. at 15); and that Defendants

22

"took intentional and deliberate actions to discriminate against the Plaintiff because she was a member of several 'dominant' or 'majority' groups (white, straight), in favor of members of a 'minority' or 'historically disadvantaged' group." (*Id*. at 15-16). At times, she attempts to bolster her argument by adding the word "clearly," insisting, for example, that her work environment was driven by "discriminatory bias clearly emanating from the Defendants' offensive conduct." (*Id*. at 28). Yet like the Complaint itself, Plaintiff's argument fails to support these conclusions of law with even a hint of detail. The allegations instead reflect the essence of what the U.S. Supreme Court rejected in *Iqbal/Twombly* – they are not merely "sparse," but devoid of content. *Solola*, 2016 U.S. Dist. LEXIS 110030, at *2.

Accordingly, the Plaintiff has not proffered any facts to establish a connection between her termination and any protected characteristic.

### C. Plaintiff Fails To Set Forth Facts Sufficient To Establish A Prima Facie Case Of Hostile Work Environment Under RICRA, FEPA, Title VII, and the ADEA.

To make a *prima facie* showing of a hostile work environment, Plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she was subjected to harassment; (3) the harassment was based upon her gender, race, sexual orientation, age, and/or religion; (4) the harassment was sufficiently severe or pervasive so as to alter the conditions of her employment and create an abusive

23

work environment; (5) the harassment was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established. *Garmon v. AMTRAK*, 844 F.3d 307, 317 (1st Cir. 2016); *see also Goodwin v. UTGR, Inc.*, 2024 U.S. Dist. LEXIS 179864, at \*18 (D.R.I. Sep. 30, 2024).

As the District Court concluded, the facts alleged here "do not allow the Court to connect the dots between the plaintiff's protected characteristics and the [] reported intradepartmental machinations and backbiting" and the "totality of alleged incidents [do not] plausibly suggest the severe or pervasive harassment required to sustain a hostile work environment claim." (Mem. & Order 179-180). Plaintiff's allegations neither (i) discuss, describe, or explain how Defendants' alleged actions created a work environment so severely or pervasively tainted with discrimination that it was sufficient to create a hostile work environment as a matter of law, nor (ii) provide an explanation as to why her department chair wanted to "take her down" on the basis of her gender, race, sexual orientation, age, and/or religion or how the statements included in paragraphs 111-114 of the Complaint relate to her gender, race, sexual orientation, age, and/or religion. They are instead wholly conclusory: "Plaintiff's Verified Complaint adduced sufficient facts to establish that any harassment by the Defendants was predicated on these

24

characteristics." (Appellant Brief at 29-30; *see also* Compl. ¶¶ 23, 72, 81, 137-168); *Felix*, 2021 U.S. App. LEXIS 38057 at *9 (affirming summary judgment for the employer where plaintiff failed to provide "any specific facts beyond her own speculation and conclusions unsupported by record evidence to show that she was discriminated against or retaliated against when her employment with the Town ended.").

In addition to its conclusory nature, Plaintiff's claim of hostile work environment fails as matter of logic – and law. Plaintiff alleges that her "white department chair" made a deliberate effort "to take her down and to solicit students and faculty in the effort." (Appellant Brief at 28). Yet the complaints about Plaintiff's alleged lack of professionalism (*i.e.*, accusing her of a "transgender slur" and "making [of] racist comments"), could not have created a hostile work environment, that is, a workplace "permeated with intimidation, ridicule, [and] demeaning comments" because none of these statements were directed to or at her, but were instead submitted to officials about her – in some instances anonymously – and because they issued just before and after her termination. (Compl. ¶¶ 40, 75; Appellant Brief at 4, 11, 28); *see also Ayala-Sepulveda v. Municipality of San German*, 671 F.3d 24, 31 (1st Cir. 2012) (concluding plaintiff failed to demonstrate that he was subject to a hostile work environment where he "presented almost no evidence to suggest that the alleged harassment at OMME unreasonably interfered

25

with his work performance." (cleaned up)); *Bartlett v. Am. Power Conversion Corp.*, No. CA 05-084 ML, 2006 U.S. Dist. LEXIS 72294, at *21 (D.R.I. Sep. 20, 2006) (dismissing hostile work environment claim where an alleged incident was "neither directed at [plaintiff] nor reported to APC's management until after several months had elapsed."); *Campbell v. Garland*, No. 22-11067, 2023 U.S. App. LEXIS 29160, at *13-15 (5th Cir. Nov. 2, 2023) (affirming summary judgment in favor of employer where the employee failed to show how the alleged "conduct interfered with his work performance.").

Moreover, Plaintiff mischaracterizes the student complaints and witness statements as an attack based on her gender, race, sexual orientation, age, and/or religion. The Complaint makes plain, however, that these were complaints alleging Plaintiff's own bias against those within certain protected groups. (Compl. ¶¶ 111-114). A student who alleges that Plaintiff is hostile to transgender or non-white people is not discriminating against Plaintiff because she is not transgender and white. Bias is not so confined. This attempt to deflect the students' accusations by insisting that she is the victim is not one that the Court should indulge.

Further, Defendant Salve had a duty to investigate the student complaints that were filed against Plaintiff immediately following her November 15 class. *See Gumm v. Ak Steel Corp.*, No. 24-1767, 2025 U.S. App. LEXIS 6468, at *11-12 (6th Cir. Mar. 18, 2025) (affirming the district court's decision to dismiss the

26

employee's hostile work environment claim where the employer was required to investigate the employee's workplace conduct after it received numerous complaints regarding the same and the employee failed to identify anything unusual about the investigation that would rise to the level of severe or pervasive harassment). So, although the complaints may have been upsetting to Plaintiff, her sense of offense is not sufficient to make out a hostile work environment claim. *See id.*; *see also Sepulveda-Vargas v. Caribbean Rests., LLC*, 888 F.3d 549, 555 (1st Cir. 2018) ("retaliatory action must be "material," and produce "a significant, not trivial harm"; "actions like petty slights, minor annoyances, and simple lack of good manners" will not suffice.").

Lastly, the few remarks that Plaintiff invokes, allegedly said at some point during her employment, *i.e.*, that Plaintiff was "old school," that a student may want a different advisor who is capable of "fresh ideas and perspectives," and that Plaintiff did not use gender neutral endings in Spanish because she was "older" (Compl. ¶ 74), are not enough to make a case. Such "offhand comments. . . without more [are] insufficient to support a hostile work environment claim." (Mem. & Order 180); *see Vargas v. Santander Fin. Servs.*, No. 15-1521, 2018 U.S. Dist. LEXIS 230000, *41, 46 (D.P.R. Sept. 4, 2018), *aff'd*, *Santana-Vargas v. Banco Santander P.R.*, 948 F.3d 57 (1st Cir. 2020) (finding "the supervisors' alleged two age based remarks were not sufficiently pervasive, abusive, or insulting to create

27

an environment that unreasonably interfered with [the employee's] work performance."). Plaintiff, therefore, fails utterly to show that she "suffered a *frequent pattern* of abusive behavior that altered her work environment." (Appellant Brief at 31 (emphasis added)); *see also Flood v. Bank of Am. Corp.,* 780 F.3d 1, 12 (1st Cir. 2015) ("Offhand comments and a tense or uncomfortable working relationship with one's supervisor are, without more, insufficient to support a hostile work environment claim."); *Scalone-Finton v. Falmouth Pub. Sch.*, No. 1:21-cv-11792-JEK, 2024 U.S. Dist. LEXIS 175553, at *43-44 (D. Mass. Sep. 27, 2024) (citing *Alvarado v. Donahoe*, 687 F.3d 453, 462-63 (1st Cir. 2012) (isolated incidents of derogatory language, even when fairly severe, are insufficient to create a hostile work environment)).

Accordingly, there exists no fact in Plaintiff's Complaint to support the conclusory claim that she experienced either severe or pervasive harassment based on her membership in a protected class.

## D. Plaintiff Fails To Set Forth Facts Sufficient To Establish A Prima Facie Case Of Retaliation Under Title VII And Title IX.

To establish a *prima facie* case of retaliation, Plaintiff must "show that (1) she undertook protected conduct; (2) she suffered an adverse employment action, and (3) the two were causally linked." *Cherkaoui v. City of Quincy*, 877 F.3d 14, 28 (1st Cir. 2017).

28

As the District Court found, Plaintiff's retaliation claim reduces to her wanting to "teach in an environment of free speech and academic freedom." (Mem. & Order 181). But "simply performing one's job duties is not itself a protected activity under Title VII; a plaintiff must oppose a discriminatory practice." *Warren v. Kemp*, 79 F.4th 967, 974 (8th Cir. 2023). The Complaint does not allege that Plaintiff did so. (Mem. & Order 181).

Plaintiff now insists her retaliation claim is more complicated (Appellant Brief at 33), alleging that she (i) "opposed conduct by the employer which potentially violated Title VII or IX" and (ii) "participated in the school's disciplinary process[.]" (*Id.* at 34). Plaintiff's pivot fails to save her lawsuit.

First, Plaintiff fails to explain what conduct she opposed or when and/or how she opposed such conduct. (*Id.*); *see* also *Felix*, 2021 U.S. App. LEXIS 38057, at *9 (noting plaintiff "cannot rely on conclusory allegations, improbable inferences, acrimonious invective, or rank speculation."). Second, although Plaintiff participated in her termination review hearing, this hearing occurred *after* her termination – in May 2022. It cannot be that by opposing her termination after it took place, in a post-termination hearing, Plaintiff engaged in protected conduct that makes out a claim of retaliation under Title VII, in which the adverse action is the termination itself. By that logic, her opposition to termination would amount to a claim of retaliation without more, and would conflate all three elements, *i.e.*,

29

opposition, adverse action, and causal link, into one. This is not the law. *See Miceli v. JetBlue Airways Corp.*, 914 F.3d 73, 85 (1st Cir. 2019) (affirming summary judgment for the employer on plaintiff's retaliation claim where "the appellant filed her MCAD complaint" after "she was subject to suspension and termination review."); *Pearson v. Mass. Bay Transp. Auth.*, 723 F.3d 36, 42 (1st Cir. 2013) (noting "[c]ausation moves forward, not backwards, and no protected conduct after an adverse employment action can serve as the predicate for a retaliation claim.").

Plaintiff's final grasp at finding facts to support a retaliation claim is her allegation that she "clearly participated in a prior matter regarding a grievance she filed against her department chair." (Appellant Brief at 34; *see also* Compl. ¶¶ 38-39). Such a non-explanatory reference to an undated grievance is too conclusory to form the basis of a retaliation claim. (Mem. & Order 181; Appellant Brief at 34); *see* also *Felix*, 2021 U.S. App. LEXIS 38057, at *9. In fact, there is no way of knowing whether Plaintiff's grievance was "protected activity" because Plaintiff grieved a dispute with her department chair or because Plaintiff grieved discriminatory employment practices by her department chair based on her protected characteristics. *See Ponte v. Steelcase Inc.,* 741 F.3d 310, 322 n.10 (1st Cir. 2014) (employee's complaint about a lack of support from her superior did not qualify as "protected conduct" under Title VII or related state law because

30

"conduct is not protected in a retaliation context where it does not allege an employment practice prohibited by either statute."); *Burns v. Johnson*, 18 F. Supp. 3d 67, 73-74 (D. Mass. 2014) (concluding that the employee's complaints constitute "mere complaining in general terms about general bad acts rather than activity protected by Title VII" because the employee did not allege that when she complained it was because "she believed Johnson's behavior was based on her gender."); *compare Dressler v. Daniel*, 315 F.3d 75, 78 (1st Cir. 2003) ("Reporting sexual harassment or initiating a charge of sexual harassment is a protected activity under Title VII") and *Wright v. CompUSA, Inc.*, 352 F.3d 472, 478 (1st Cir. 2003) ("requesting an accommodation is protected activity"). Nothing in the Complaint shows when Plaintiff filed her grievance against her department chair – was it filed five years ago, several months prior to Plaintiff's termination, or the day prior to her termination. *See Dressler*, 315 F.3d at 80 (noting "the inference of a causal connection becomes tenuous with the passage of time."). Again, Plaintiff provides *zero* factual support to establish that her purported grievance was "protected activity" or that it had any nexus to her termination. *Rae v. Woburn Pub. Sch.*, 113 F.4th 86, 101 (1st Cir. 2024).

Lastly, Plaintiff alleges that she initiated the Title IX process. (*See* Appellant Brief at 34 ("… retaliated against her for initiating the Title IX process.")). This is not accurate. Plaintiff never initiated a Title IX complaint or the Title IX process.

Rather, as Plaintiff herself concedes in her Complaint, Salve initiated the Title IX process against her, upon receipt of student complaints regarding Plaintiff's conduct during her November 15 class. (Compl. ¶ 48).

Accordingly, the Court should dismiss any claim of retaliation because there exists no fact in Plaintiff's Complaint to support the idea that she engaged protected conduct or that her termination was the result of such protected conduct.

## VII.    CONCLUSION

Plaintiff filed the Complaint without support for a single claim. She makes sweeping allegations of unlawful discrimination, hostile work environment, and retaliation. Yet as the Complaint itself shows, Plaintiff was terminated because for years she had refused to address serious performance deficiencies, and not because she is a Christian white heterosexual woman over the age forty who identifies as female. This Complaint "fails at its inception." *Zell v. Ricci*, 321 F. Supp. 3d 285, 301 (D.R.I. 2018). "No inference that this Court could draw [can] rescue Plaintiff" from the conclusion that she just does not have a case. *Id.* at 294. Thus, Defendants ask that this Court affirm the District Court's decision to dismiss Plaintiff's state and federal anti-discrimination claims in their entirety (Counts V-IX).

**DEFENDANTS-APPELLEES,**

**By their attorneys,**

/s/ Sara A. Rapport
Joseph D. Whelan (#5694)
Sara A. Rapport (#6184)
WHELAN CORRENTE & FLANDERS LLP
100 Westminster Street, Suite 710
Providence, RI  02903
Tel. 401-270-4500
jwhelan@whelancorrente.com
srapport@whelancorrente.com

**Dated: April 14, 2025**

## CERTIFICATION OF COMPLIANCE

1.     This document complies with Federal Rule of Appellate Procedure 32(a)(7), and excluding the accompanying documents that may be submitted pursuant to Federal Rule of Appellant Procedure 32(a)(7)(B) because:

This document contains 8,825 words.

2.     This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

/s/  Sara A. Rapport

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th of April, 2025, I served the foregoing document to counsel of record for all parties via the Court's CM/ECF system.

/s/  Sara A. Rapport