**No. 24-1656**

United States Court of Appeals
For the First Circuit

_____

Linda Crawford

*Plaintiff-Appellant,*

*v.*

Salve Regina University, et al.

*Defendants-Appellees.*

_____

On Appeal from the United States District Court for the District of Rhode Island
in Case No. 1:23-cv-00380-MSM, Judge Mary McElroy

_____

**REPLY BRIEF OF APPELLANT LINDA CRAWFORD**

_____

STEPHEN T. FANNING
305 South Main Street
Providence, RI 02903
(401) 272-8250
Stephenfanning@msn.com
May 14, 2025

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

**TABLE OF CONTENTS** ....................................................................... i

**TABLE OF AUTHORITIES** ................................................................ ii

**ARGUMENT** ..................................................................................... 1

    **A. As the Issue of Discriminatory Terms and Conditions of Employment Involved Factual Questions That Could Not Be Resolved At the Dismissal Stage, the District Court Erred in Granting Defendants' 12(b)(6) Motion**………………………..…………………………………1

    **B. The District Court Erred in its Determination that the Plaintiff's factual allegations did not yield a plausible claim that her membership in any of the submitted protected classes played a role in her termination** ....... 5

    **C. Plaintiff's Membership in a Protected Class Played a Role in Her Termination**……………………………………………………………. 11

    **D. The District Court Further Erred in Dismissing the Complaint's Allegation that Plaintiff was Subjected to a Hostile Work Environment**……………………………………………………………13

    **E. The District Court Erred in Dismissing Plaintiff's Retaliation Claims**……………………………………………………………...16

    **CONCLUSION**…………………………………………………………… 18

4881-4565-5036, v. 2

# TABLE OF AUTHORITIES

**Cases**                                                                                     **Pages**

*Reliance Insurance Co. v. City of Boston*, 71 Mass.App. Ct. 550,555 (2008)….3

*Bazinet v. Beth Israel Lahey Health, Inc.*, 113 F.4th 9 (1st Cir. 2024)……… 12

*Banco Santander de P.R. v. Lopez—Stubbe (In re Colonial Mortg. Bankers Corp.)*, 324 F.3d 12 (1st Cir. 2003)…………………………………………………….. 12

*Bell Atl. Corp. v. Twomby*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ...................................................................................................................12

*DeCamp v. Dollar Stores, Inc.* 875 A2d. 13, 21-22 (RI 2005)…………………. 13

*Franchina v. City of Providence,* 881 F.3d. 32, 45 (1st Cir. 2018)………………. 13

*Rivera-Rivera v. Medina & Medina, Inc.,* 898 F.3rd 77, 91 (1st Cir. 2018)…….. 13

*Pinkerton v. Colorado Department of Transportation*, 563 F.3d. 1052 (10th Cir. 2009)……………………………………………………………………...……16

*Harris v. Forklift Systems, Inc.* 510 U.S. 17,21 126 L.E.d. 2d. 295 (1993)…….. 16

*Faragher v. City of Boca Raton*, 524 U.S. 775 (1998)……………………………16

*Crowley v. L.L.Bean, Inc.*, 303 F.3d 387 (2002………………………………….. 16

*Garcia-Catalan v. United States*, 734 F. 3d 100, 103 (1st Cir. 2013)…………… 18

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)…………………………………… 18

*Grajales v. Puerto Rico Ports Authority*, 682 F.3d 40 (1st Cir. 2012)…………… 18

4881-4565-5036, v. 2

**<u>Statutes</u>**

RI Civil Rights Act of 1990 (R.I.G.L §42-112-1 et. seq.)……………………..    1

RI Fair Employment Practices Act (R.I.G.L §28-5-1 et seq.)…………………..    1

Title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000 et seq.)……………    1

Title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.)……    1

Age Discrimination in Employment Act (29 U.S.C. et seq.)……………………    1

iii

4881-4565-5036, v. 2

**ARGUMENT**

**A. AS THE ISSUE OF DISCRIMINATORY TERMS AND CONDITIONS OF EMPLOYMENT INVOLVED FACTUAL QUESTIONS THAT COULD NOT BE RESOLVED AT THE DISMISSAL STAGE, THE DISTRICT COURT ERRED IN GRANTING DEFENDANTS' 12(B)(6) MOTION**

The District Court erred in granting Defendant's Rule 12(b)(6) motion with respect to Plaintiff's Title VII, and Rhode Island state correlative discrimination claims. The Plaintiff's Verified Complaint ("Complaint") plainly set forth claims of gender, race, sexual orientation, age and religion in violation of RICRA, FEPA, Title VII, Title IX and the ADEA and Plaintiff met her burden with respect to this filing.

As a threshold matter, Defendants' Response Brief appears to demean and oversimplify Plaintiff's position as one of her simply being "unhappy" with the results of the Defendants' disciplinary protocols and faculty hearing process. Moreover, Defendants' Statement of the Facts is misleading and devoid of the crucial allegations underlying Plaintiff's Complaint. For example, Defendants aver that Plaintiff had a hearing before a Faculty Board and a review by the University's Board of Trustees. The Defendants simplistically note that the results of these hearings/reviews made the Plaintiff unhappy.

However, as thoroughly discussed in her Complaint, these processes were perfunctory and biased. Defendants contend that the hearing board proceeding took

4881-4565-5036, v. 2

place with "full participation from the Plaintiff." (Defendants' Reply, P. 7) However, the Complaint does not make this allegation and, in fact, the decision of the Hearing Board states that in the opinion of the *majority*, the effort of the University to terminate the Plaintiff/Appellant was *biased and unfair*.

It is respectfully urged that the Trial Court aired in granting the Defendants' 12(b)(6) motion to dismiss without converting it to a motion for summary judgment under FRCP 56 and allowing the Plaintiff a reasonable opportunity to submit other extraneous proofs to rebut the contention of the moving party. The Plaintiff should have received notice of conversion and been given an opportunity to be heard as contemplated by Rule 56. The Trial Court indicates that it had the discretion to consider the 12(b)(6) motion without converting it to one for summary judgment because it limited its consideration to basically two exhibits -- Faculty Manual excerpts and Faculty Committee Hearing Board majority and minority opinions.

However, even if the Court only considered these limited documents, these documents clearly implicate a significant factual dispute as to the Defendants' discriminatory motive, one that could never be resolved by the Rule 12(b)(6) standard. It was error for the Trial Court not to convert Defendants' motion to one for Rule 56 summary judgment, and require that the Defendants submit a narrative summary of what they contend to be undisputed material facts. The Rule 56 strictures regarding notice hearing and admissibility of evidence are strictly required

2

pursuant to a Rule 56 motion for summary judgment. The Trial Court in this matter has simply compressed Plaintiff's numerous factual allegations into a general finding that her case does not contain sufficient factual allegations without the benefit of the slightest effort towards discovery or further opportunity to probe Plaintiff's serious allegations.

It should be noted that, in support of its motion to dismiss, the Defendants attached not only *two* exhibits, but approximately *ten* exhibits, comprising approximately 125 additional pages of alleged evidence, in support of its arguments for dismissal. Fed. R. Civ. P. 12(d) states that: if, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion *must* [emphasis added] be treated as one for summary judgment under Rule 56 and "*All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.*" (Emphasis added.) See *Reliance Ins. Co. v. City of Boston*, 71 Mass. App. Ct. 550,555 (2008) ("Where the failure to provide such an opportunity results in prejudice to a party, such a failure can constitute reversible error.") To the extent the Trial Court implicates that it only considered two documents --- the Faculty Manual and the Hearing Board Report--- the Court and the Defendants should not have been

3

permitted to "cherry pick" portions of those documents, without affording the Plaintiff the opportunity to clarify pertinent facts.

Towards that end, in support of its 12(b)(6) motion, the Defendants attached, *inter alia*, purported "student complaints" against the Plaintiff and other documents that may not be admissible at trial, for the various reasons, including but limited to the fact that these documents are wholly unauthenticated. For example, contained in Defendants' Exhibit 5 of the external documents, are approximately 9 communications, alleged by Salve to have been drafted by students and faculty. In all cases, but one from a faculty member, these statements are unsigned (or redacted), undated, unverified and unauthenticated. Plaintiff's efforts to obtain the documents in their original form, as would have been available in the discovery process, were futile. Plaintiff has not had the opportunity to confront these alleged complainers at this early stage. (In fact, each of the alleged student statements were drafted *after* a meeting engineered by the Defendant Department Chair and apparently at his instruction, just as Plaintiff properly alleged in her Complaint.)

However, the facts as alleged by Plaintiff (and therefore taken as true for purposes of the pending motion) are clear that these derogatory statements emanated from the Defendants or agents under the Defendants' control and direction. It is not "conclusory" to state that this material played a significant role in what the Plaintiff contends was a concerted effort to destroy her employment

4

4881-4565-5036, v. 2

and career. Basically what the Defendants have done is to simply assert that the Court should favor its gratuitous factual statements over the Plaintiff's properly pled statements in her Complaint.

**B. The District Court Erred in its determination that the Plaintiff's factual allegations did not yield a plausible claim that her membership in any of the submitted protected classes played a role in her termination was clearly erroneous.**

At the early dismissal stage, the Court's function is to determine whether genuine issues of material fact exist, and not to decide those facts one way or another, unless the evidence is incapable of being construed in any but one way.  In this matter, the trial Court's consistent approach was to cite disputed facts and then resolve the issues that Plaintiff has clearly and properly plead, virtually without exception, in favor of the Defendants.

For example, the Trial Judge states that the Plaintiff was "mired in workplace conflicts."  (Page 3 of Mem. & Order)  That is a conclusory statement by the Trial Judge.   The Plaintiff alleged that there existed a "protracted history or disagreements" with her department chairperson.  (Complaint, ¶39)  That allegation resulted in the Trial Judge's unwarranted conclusion as stated above.  There is a vast difference between Plaintiff having a disagreement with her Department Chair and being "mired" in workplace conflicts and there was no reasonable basis for the Court to characterize Plaintiff's work history in this manner.

5

This was a conclusory statement made by the Trial Judge which lacked context and evidentiary support but would, in effect, bolster the argument by the Defendants that there was a nonfabricated basis for Plaintiff's treatment.  However, those are no the facts alleged by the Plaintiff in her Complaint to that effect.

On the contrary, the facts asserted by the Plaintiff indicate that the Plaintiff's *male* Department Chair made repeated attempts to undermine the Plaintiff by coordinating student protests and complaints against her which were characterized by allegations predicated on her protected characteristics.  For example, this individual, as well as an unnamed University Provost, directed undergraduate students to "keep a running list of criticisms of the Plaintiff."  (Complaint, ¶70) As the Complaint clearly articulates, these criticisms were rooted in Plaintiff's gender, sexual orientation/identification, age, religious beliefs and other protected characteristics, and formed the basis for the University's campaign to discipline and discharge the Plaintiff, *not* based on her performance as a tenured faculty member but motivated by illicit and unlawful considerations.

The comments asserted by the Plaintiff in her Complaint were defamatory and created a hostile work environment.  (Notably, the trial Judge remanded Plaintiff's defamation claim to state court.)  If there is any question that comments made about the Plaintiff are defamatory resulting in remand, it would be erroneous to simultaneously conclude that those same comments cannot, as a matter of law,

4881-4565-5036, v. 2

represent a claim for hostile work environment upon which relief can be granted.  In essence, the Trial Judge is concluding that the alleged comments are not bad enough to create a hostile work environment but reserving opinion on whether or not they rise to the level of defamation.  Such a position begs the question as to how words can be potential defamation yet not create a hostile environment.

The facts implicate that Plaintiff's *male* Department Chair encouraged students in Plaintiff's classes to undermine her with the University administration by making derogatory statements about her clearly premised on her protected characteristics.  At this early stage, absent the benefit of any discovery, the Trial Judge cannot plausibly or reasonably make the determination that the Defendants' conduct was *not* motivated by a discriminatory animus based on Plaintiff's protected characteristics.  This case is in its infancy.  It is reversible error for the Trial Judge to conclude that statements and actions initiated by the Plaintiff's Department Chair, as properly pled in the Complaint, were not part of an effort to undermine the Plaintiff, a tenured faculty member, on the basis of her gender, age, sexual orientation/identification, and religion.

The Trial Judge reached these conclusions despite her stated reliance to a significant extent, on the decision(s) by the University's Faculty Committee Hearing Board (Mem. and Order. P.6), reading them as if incorporated into the Complaint.  However, she went on to note, the position of the majority of

7

the board that Plaintiff's termination was based on evidence that was collected prejudicially and that testimony against her was not solicited in an independent way. The majority opinion also rejected the University's attempt to include "sexual harassment" as a charge against the Plaintiff, for which there is absolutely no evidence, as a reason for the Plaintiff's termination, without evidence that a Title IX investigation was ever conducted.  (Mem. and Order, P. 7, 9)

The Trial Judge evidently disregarded the Board's minority opinion which describes the Plaintiff's termination process as "prejudicial," asserting that evidence was collected from a **biased** sample of students and colleagues, that student feedback and other objective performance measures were cherry picked to support dismissal and that the University did not substantively respond to evidence presented by the Plaintiff that "undercuts the legitimacy of their [the university's] charges."  (Mem. and Order, P. 8)  The Board minority characterizes  the administration's approach to the termination process as: "we need to dismiss [Plaintiff]; these are the categories available to us to do so; let us try to wedge [Plaintiff's] problems into these categories the best we can." (Mem. and Order, P. 8)

It is problematic that the Trial Judge could cite these obvious factual disputes between the Parties and then proceed to resolve material disputed facts in favor of the Defendants and issue a blanket dismissal of Plaintiff's claims.

8

In its Response Brief, the Defendants isolate four paragraphs of the Complaint and then assert that the four paragraphs that are not 100% conclusory are still conclusory. (Defendants' Response, P. 24, Lines 1-2)  Needless to say, in the context of a 12(b)(6) proceeding there is no review standard providing that allegations can be a little bit conclusory but not completely conclusory in determining whether allegations are sufficient to survive the motion.    The Defendants appear to engage in wordplay in an attempt to undermine what the Plaintiff has properly pled and an in an effort to have her claims prematurely disposed of.

Towards that end, it should be noted that some of the allegations made by the Plaintiff can reasonably reflect micro-aggressions which are behavioral or environmental slights that communicate hostile, derogatory or negative attitudes towards marginalized groups.  Absent an opportunity to probe the *context* of Plaintiff's allegations, at this early stage, the Trial Court erred in determining that the Plaintiff failed to set forth facts to establish a prima facie case of discrimination and hostile work environment based on the totality of circumstances presented.

Defendants attempt to microanalyze the content of four specific paragraphs of the Complaint which it alleges, as noted above, are not 100% conclusory but, in its view are nevertheless conclusory.  The Trial Judge erred, without any evidentiary basis, in concluding that an "explanation" for facially

9

discriminatory statements undercut any inference of discriminatory animus.  (Mem. & Order 174)  It was error for the Judge to assume authority for deciding a speaker's motivation.

Moreover, a person assisting an individual committing a wrongful act,  may also be held liable for committing the wrongful act under certain circumstances. Essentially, there is civil liability for encouraging bad behavior.  Both as an individual and in collusion with the Defendant University, Defendant Department Chair Mitchell is alleged to have encouraged individuals to make false and demeaning statements about the Plaintiff.  Defendant Mitchell and Defendant University should be subject to liability based on traditional tort theory.  Notably, the Plaintiff's defamation and breach of contract claims have been remanded to the Superior Court which further begs the question of how Plaintiff's discrimination claims can be dismissed without a ruling on those claims.  Malicious and influential communications from Mitchell, either verbal or nonverbal, should suffice to support civil liability.  If such liability exists, the actor who encourages a particular behavior should be liable for the proximate harm that follows.   The conduct encouraged by the Defendants  towards the Plaintiff is severe and egregious.  Defendants did not merely render off-hand opinions of the Plaintiff or her teaching methods, they misused students as a conduit to publicize vile statements about the Plaintiff in an effort to accomplish her professional ruination.

4881-4565-5036, v. 2

C.  **Plaintiff's Membership in a Protected Class(es) Played a Role in Her Termination**

Plaintiff's membership in several protected classes was the reason for the adverse employment actions suffered by Plaintiff and the facts in this matter clearly provide the backdrop for a claim of discrimination based on her protected characteristics.

Discrimination cases involve complex issues of intent, motive and credibility that cannot be resolved through the limited scope of a 12(b)(6) motion. Discrimination claims frequently rely on circumstantial evidence, and the determination of whether unlawful discrimination occurred requires a careful examination of the facts, the context, and the motivations of the parties involved. (It bears noting that the majority of the cases cited by the Defendants in support of its opposition to Plaintiff's appeal involved decisions made after a Summary Judgment.) Granting the Defendants' motion to dismiss the Plaintiff's claims prematurely denies the Plaintiff the ability to fully present her case, including any patterns of discriminatory behavior, and undermines the fundamental principle that such claims should be fully explored in a trial setting where evidence can be properly weighed.

It is elemental that because "this appeal arises from the dismissal of the complaint for failure to state a claim, [this Honorable Court will] . . .draw the material facts from [the] complaint and the documents expressly referenced

11

therein[,]" and that, "[i]n describing the facts, [this Honorable Court will] . . . indulge all reasonable inferences that fit [Plaintiff's] stated theory of liability." *Bazinet v. Beth Israel Lahey Health, Inc.*, 113 F.4th 9, 12 (1st Cir. 2024) ("*Bazinet*"), *citing Banco Santander de P.R. v. Lopez—Stubbe (In re Colonial Mortg. Bankers Corp.)*, 324 F.3d 12, 15 (1st Cir. 2003) (internal quotation omitted). This Court, that is, "[i]n evaluating the dismissal order, . . . [will] consider the facts as alleged in [Plaintiffs'] complaint and the content of documents . . . sufficiently referenced in the complaint[,]" (*Bazinet v. Beth Israel Lahey Health, Inc.*, 113 F.4th at 15, *quoting Bell Atl. Corp. v. Twomby*, 550 U.S. 544, 556, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

The Trial Court erred by attributing Plaintiff's termination to a "reported inter-departmental machinations and back biting." (Mem. & Order 179-180) This is especially true because the Plaintiff's Complaint asserted an alternative and plausible basis for her treatment which was rooted in discriminatory animus. At this early stage, if the Court is going to dismiss objectively vile remarks as insufficient to state a claim for relief based on Defendants' alternative explanation for the improper conduct, the Trial Court has committed reversible error. In essence, by dismissing the Plaintiff's claims the Court is saying that it simply believes the Defendants' theory of the case over the Plaintiff's. A 12(b)(6) motion is not the

12

proper mechanism to make such a determination which undoubtedly raises issues of credibility and determines same in the favor of one party.

### D.  THE DISTRICT COURT FURTHER ERRED IN DISMISSING THE COMPLAINT'S ALLEGATION THAT PLAINTIFF WAS SUBJECTED TO A HOSTILE WORK ENVIRONMENT

The Plaintiff's Complaint alleged that the Defendants subjected her to an unlawful hostile work environment related to her gender, race, sexual orientation, age and religion in violation of RICRA, FEPA, Title VII, and the ADA.  Each of these statutes applied the same standard.  See *DeCamp*, 875 A.2d at 21-23 (RICRA and FEPA); *Franchina v. City of Providence*, 881 F.3d 32, 45 (1st Cir. 2018) (Title VII); *Rivera-Rivera v. Medina & Medina, Inc.*, 898 F.3d 77, 91 (1st Cir. 2018)(ADEA).

The Trial Judge erred in finding that the "totality of the alleged incidents" did not plausibly suggest the severe or pervasive harassment required to substantiate a hostile work environment claim.  (Mem. & Order, P. 22)  It appears from the Trial Judge's Memorandum and Order that she dilutes Plaintiff's allegations as merely creating a tense or uncomfortable working relationship with her supervisor.  This is a conclusory determination essentially taking for granted everything the Defendants assert as true, a clear inversion of the proper standard to be applied in these cases.

13

4881-4565-5036, v. 2

The allegations in Plaintiff's Verified Complaint are not limited to a stray remark or offhand comment regarding her professional acumen. The conduct that she asserts clearly stems from considerations of her protected characteristics which created an untenable environment causing her extreme stress and humiliation. It is dubious how the Trial Judge could conclude that the Plaintiff's allegations of, *inter alia*, being called antisemitic, homophobic, a parasite, a racist, and the subject of baseless lies and aspersions on her character and professional abilities do not suggest the severe or pervasive harassment required to sustain a hostile work environment claim (not to mention that this conduct ultimately resulted in her termination.)

Plaintiff's verified factual assertions paint a picture of a deliberate effort by her white male department chair, encouraged and manipulated by the University to solicit students and faculty in an effort to destroy her career as a tenured professor. It is not reasonable for the Trial Judge, without the benefit of discovery, to suggest that the comments and conduct asserted by the Plaintiff in her Complaint were mere offhand remarks and insufficient to support a hostile work environment claim especially in light of the discriminatory bias clearly emanating from the Defendants' offensive conduct.

Towards that end, Plaintiff directs the Court to her Complaint, ¶111, 112; 114 in which she outlines over 25 statements made by and/or elicited by

14

authoritative University personal which were offensive in nature and/or shed the Plaintiff in a negative light based on her protected characteristics creating a hostile work environment.  These comments included but were not limited to accusing the Plaintiff of using offensive language and severely hateful rhetoric towards the LGBTQ+ community and people of color; accusing her of using a transgender slur; accusing her of making racist comments; calling her a parasite; inhumane and toxic.

It is critical to note that, at this early stage of the proceedings, the Court cannot determine that had it not been for Plaintiff's membership in certain protected groups that she would not have been targeted by the Defendants.  The Plaintiff should be allowed to show that had she not been a "cis white woman" she would not have been accused of being homophobic or racist.  The Defendants, in their Response argue that the Plaintiff is insisting that she is the victim in an attempt to deflect the students' accusations and the Defendants' urge that is not an argument that the Court should indulge.  (Defendants' Response, P. 32)  In fact, such disputes are exactly why Courts exist.  The apparent conclusion of the Trial Court that it is not the Plaintiff who has been harmed, without benefit of any discovery, is clear and reversible error.   Bias and discriminatory animus cannot be determined in a vacuum and, especially in light of the subtleties and complexities

15

existing in the case at bar, it cannot be determined that Plaintiff has no right to relief under the facts she has pled in her Complaint.

The comments and conduct alleged by the Plaintiff in her Verified Complaint, take on the undeniable air of unlawful harassment in the overall context of combined incidents which, in the aggregate, come together to constitute a pervasively hostile environment. *Pinkerton v. Colorado Department of Transportation*, 2009 U.S. App. LEXIS 7890 (April 16, 2009) An environment is hostile when the workplace is permeated with intimidation, ridicule, demeaning comments, that are sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21 126 L.Ed. 2d 295 (1993). A reasonable trier of fact could find that the conduct to which Plaintiff was subjected was frequent, abusive, and substantially altered her work environment, and was both objectively and subjectively offensive. See Gen**.,** *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998). See Gen**.** *Crowley v. L.L. Bean, Inc.*, 303 F.3d 387 (2002)

## E. THE DISTRICT COURT FURTHER ERRED IN DISMISSING PLAINTIFF'S RETALIATION CLAIMS

"[I]ndulging all reasonable inferences that fit [Plaintiff's] stated theory of liability" (*Bazinet v. Beth Israel Lahey Health, Inc.*, 113 F.4th 9, 12 (1st Cir. 2024)),

16

the District Court should properly have determined that the Complaint sufficiently presented a case of retaliation under Title VII and Title IX.

With respect to whether or not the adverse action was causally linked to the protected activity – the Complaint avers sufficient allegations supporting this element. The Defendants *pretextually claimed* that the Plaintiff had various performance deficiencies, when, in fact, *there was no basis* for such claimed misconduct.

The employment practices of which Plaintiff complained, as clearly outlined in her Verified Complaint, is the conduct by the Employer in eliciting, condoning and encouraging faculty and staff to spew lies and hateful rhetoric towards the Plaintiff, with impunity.

Moreover, it should be noted that the Defendants took no steps to properly investigate this matter and the University's Title IX coordinator failed to conduct a full and proper Title IX investigation, although Plaintiff was fully cooperative. (Verified Complaint, ¶45,46,48) (The Defendants' Title IX investigator never spoke to the Plaintiff as part of the so-called investigation) The fact that any Title IX complaint issued clearly provides the Plaintiff with protection against retaliation. It should be further noted that in response to the Title IX complaint, the University advanced a baseless post-termination allegation of "sexual harassment" against the Plaintiff, the nature of which was clearly retaliatory.

4881-4565-5036, v. 2

**CONCLUSION**

"In determining whether a complaint crosses the plausibility threshold, 'the reviewing court [must] draw on its judicial experience and common sense." *Garcia-Catalan v. United States*, 734 F.3d 100, 103 (1st Cir. 2013)(quoting *Aschcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  Assessing whether the claim to relief is plausible is a "context-specific inquiry [that] does not demand a 'high degree of factual specificity." Id. (quoting *Grajales v. Puerto Rico Ports Authority*, 682 F.3d 40,47 (1st Cir. 2012)).  Plaintiff has more than met her burden in this regard.  She is not required to prove her whole case at this very early stage of the proceedings.

Further, it should not be lost on the Court that Plaintiff's Complaint was originally filed almost two years ago, on June 7, 2023.   The Defendants have never filed an answer to the Complaint and devoted almost two years to the filing of 12(b)(6) motions in various forums in an effort to dismiss this case prematurely.

Plaintiff respectfully requests that this Honorable Court reverse the District Court's granting of the Defendant's Rule 12(b)(6) motion, and remand the case for further proceedings.

18

4881-4565-5036, v. 2

Respectfully Submitted,
Appellant/Plaintiff Linda Crawford,
By Her Attorney,
*/s/ Stephen T. Fanning*

_____

STEPHEN T. FANNING (RI #3900)
305 South Main Street
Providence, RI 02903
(401) 272-8250
Stephenfanning@msn.com
May 14, 2025

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), the undersigned hereby certifies that this brief complies with the type volume limitation of Fed. R. App. P. 32(a)(7)(B). This brief contains 4688 words, not including its exempted portions. The brief has been prepared monospaced typeface using Times New Roman, 14 Point Font. As permitted by Fed. R. App. P. 32(a)(5) (B), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

Signed this 14th day of May 2025,

*/s/ Stephen T. Fanning*

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing Brief for Plaintiff-Appellants with the Clerk of the United States Court of Appeals for the First Circuit via the CM/ECF system this 14th day of May 2025 to be served on the following counsel of record for Defendants via ECF:

Joseph Whelan, Esq.
Matthew Parker, Esq.
Whelan, Corrente & Flanders, LLP
100 Westminster Street, Suite 710
Providence, RI 02903

Signed this 14th day of May 2025

*/s/ Stephen T. Fanning*

4881-4565-5036, v. 2

20

4881-4565-5036, v. 2